**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Olivia A. Nevarez,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | No. CV-21-00731-PHX-DJH<br><br>**ORDER** |

Before the Court is Plaintiff's Complaint (Doc. 1) seeking judicial review of the Commissioner's denial of her application for Social Security Disability Insurance Benefits. The Commissioner has filed an Answer (Doc. 16) and both parties have submitted briefs in support of their positions. (Docs. 18, 24 and 25). The Court has reviewed the briefs and Administrative Record, and now affirms the Administrative Law Judge's ("ALJ") decision. (R.[1] at 15-27).[2]

**I.　Background**

Plaintiff, born on July 14, 1975, was a younger individual at all times relevant to her claims. (R. at 44, 70). She is a high school graduate and had worked as a transcription translator and library assistant. (R. at 44, 197, 247-249). She applied for disability insurance benefits under Title II of the Social Security Act on January 2, 2018, alleging that she became disabled in December 2011 due to clinical depression, schizoaffective

---

[1] "R" refers to the Administrative Record followed by page number. (Doc. 17-3).

[2] The assigned ALJ was David Johnson.

disorder, anxiety/panic disorder, and "borderline bipolar disorder." (R. at 44, 59, 68, 170-71, 196-97).

Plaintiff and Steve Duchesne, a vocational expert ("VE") testified at the February 10, 2020 hearing. (R. at 43-65). There, Plaintiff's counsel clarified that she returned to her work as a library assistant from March 2012 through June 2012, starting as a part-time employee and ending as a full-time employee. (R. at 42-43). During the VE's testimony, the ALJ posed a hypothetical that assumed a similarly situated person as Plaintiff "can do medium work that consists of simple tasks that does not require more than minimal interaction with coworkers or the general public and that is performed where the general public is typically not present." (R. at 59). The VE clarified his understanding as "simple, unskilled, the public is not present," then testified that there were "numerous jobs that would fit that RFC" including "hand packager; Dictionary of Occupational Titles ("DOT") 920587-018, it's a medium; has an SVP of 2; there's about 115,000 jobs nationally. Kitchen helper; DOT 318.687-010; it's a medium; SVP 2: about 425,000 jobs nationally. . . . warehouse worker; DOT 922.687-058; that's medium; SVP 2; there should be about 1000,000 jobs nationally." (R. at 59-60). The VE testified that these job examples have no interaction with the general public and no more than occasional coworker contact. (R. 60-61). The ALJ noted that he asked the VE for more information than the DOT provides, including time off task, lower productivity, and unexpected absences. The VE accordingly clarified that to the extent his testimony conflicts with the DOT, his opinion was also based upon his experiences. (*Id.*).

The ALJ determined that Plaintiff "was not under a disability within the meaning of the Social Security Act from December 1, 2011, through the date last insured, December 31, 2016. (R. at 27). The ALJ found that Plaintiff had a "severe combination of impairments: schizoaffective disorder, agoraphobia, history of panic disorder, history of mood disorder, bipolar disorder, major depressive disorder (MDD), unspecified anxiety, post-partum depression, obesity, diabetes, headaches, anemia and hypothyroidism." (R. at 17). He found that the combination of her impairments "significantly limit the ability to

perform basic work activities as required by SSR 85-28." (*Id*.) In considering her medical conditions including headaches, diabetes, thyroid disorders and obesity, the ALJ determined that they do not meet medically equal listings. (R. at 18). The ALJ reasoned that his review of the medical record as to these conditions supported his finding. (*Id*.) Considering her mental impairments, singularly and in combination, the ALJ determined that Plaintiff had mild and moderate limitations. (R. at 19). The ALJ noted that Plaintiff's medical record did not indicate daily panic attacks, that her dysphoric/depressed/anxious moods were almost always normal, and that her alleged degree of limitations were inconsistent with her treatment records. (R. at 22). The ALJ found that Plaintiff had the "residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c), that consists of simple tasks; that does not require more than occasional, superficial interaction with coworkers or the general public; and that is perf[sic] where the general public is typically not present." (R. at 20).

## II. Standard of Review

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a)(4).[3] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*

---

[3] The Court presumes the parties familiarity with this process. Therefore, it will focus only on the procedural steps that are alleged to be in error.

*v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Relevant here, at step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant, though having medical and mental impairments, is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she cannot, she is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises three issues for review: 1) whether the ALJ erred by failing to analyze and resolve conflicts between the VE testimony and the DOT; 2) whether remand is required because the ALJ failed to account for Plaintiff's conclusively moderate limitations in her ability to concentrate, persist and maintain pace, and 3) whether the ALJ's and the Appeals Council's decisions were in violation of the Separation of Powers Clause and the U.S. Constitution. The Court will proceed with Plaintiff's last claim first because, if she prevails, the remaining claims are moot.

a. **Whether the ALJ's decision violated the U.S. Constitution**

Plaintiff claims that she was deprived "of a valid administrative adjudicatory process" because the SSA agency's structure is unconstitutionally valid due to a limit on the President's authority to remove the Commissioner. *See* 42 U.S.C. § 902(a)(3). (Doc. 18 at 19). Though not clearly stated, Plaintiff appears to argue, that any determination made by former Commissioner Andrew Saul lacked authority because he was alleged to have been unconstitutionally appointed, so all serving under him, including ALJs and the Appeals Council, were also devoid of their authorities. (*Id*.) Therefore, she says, the ALJs decision in her case was "constitutionally defective." The Defendant agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers. (Doc. 24 at 3). However, they also state that Plaintiff must show that the Commission's removal statute somehow affected the Commission's decision on her claim. (*Id*. at 6).

The Ninth Circuit recently addressed Plaintiff's precise argument. *Kaufmann v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022). In *Kaufman*, the court held that the statutory removal provision is unconstitutional. *Id*. at 848. However, the court also held that the removal provision is also severable and the remaining provisions of the Social Security Act are "capable of fully independent function, and nothing in the test, structure, or history of the Statute makes it 'evident' that Congress would have preferred, as an alternative to a Commissioner who is removable at will, no Social Security Administration at all." *Id*. at 849 (citation omitted); *see also Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020).

Upon severing the removal provision, the court discussed the remedy for a claimant whose appeal was denied while a Commissioner served under an unconstitutional removal statute. Applying *Collins v. Yellen*, 141 S. Ct. 1761 (2020), the court noted that the unlawfulness of the removal provision does not affect the authorities of the underlying officials to the Act. *Id*. (citing *Collins*, 141 S. Ct. at 788 at n. 23). Further, the court determined that one who challenges the agency's past acts must "show how the constitutional removal provision *actually harmed* the party." *Id*. (emphasis in original). Thus, here the Plaintiff would have to show that the agency head altered his conduct in a way that would have benefitted a party. For example, if the Plaintiff could show that "the Commissioner directed the Appeals Council to decide her case in a particular way" that could be sufficient to show harm. *Id.* at 850.

Here, Plaintiff makes no showing of how the ALJ's or the Appellate Council's decision was tied to the "unconstitutional removal provision." *Kaufmann*, 32 F.4th at 849. Plaintiff's Reply merely reasserts that the removal provision caused her harm, but never explains how. (Doc. 25 at 7) ("Ms. Nevarez did not receive the constitutionally valid adjudication process from SSA's Appeals Council to which she was entitled."). Accordingly, Plaintiff's constitutional claim fails. The Court now addresses the Plaintiff's substantive claims.

b. **Did the ALJ err by failing to analyze and resolve conflicts between the VE testimony and the DOT**

Plaintiff asserts that a conflict exists between the VE's testimony and the DOT, and that the ALJ erred in not resolving that conflict. (Doc. 18 at 6-7). The conflict she identifies is that the ALJ's RFC found that she "was able to perform only simple tasks" yet the VE's testimony included examples of existing jobs with reasoning level 2 occupations. (R. at 7-8). Plaintiff alleges that since she could only perform simple tasks, including reasoning 2 level occupations conflict with the ALJ's determination. (*Id.* at 7-8). Defendant responds that there is no conflict because the VE's identification of jobs responded to the Plaintiff's functional limits as determined by the ALJ's RFC finding. (Doc. 24 at 14-15). The Court agrees.

Plaintiff testified that she was previously employed as a library assistant, that she previously performed "quality control transcripts of doctors . . . and insurance companies" and she also performed Spanish language interpretations/translation work." (R. at 58.). The VE determined that her prior work as a library assistant qualifies as "light; SVP of 5[,] and her transcription and translation work "would be sedentary; has an SVP of 4." (R. at 59). The ALJ began by asking the VE to "consider an individual of the Claimant's age, education, and work experience . . . [who] can do medium work that consists of simple tasks that does not require more than occasional superficial interaction with coworkers or the general public and that is performed where the general public is typically not present." (*Id.*) The VE clarified his understanding as "simple, unskilled, the public is not present," then responded with examples of numerous jobs qualified by the DOT as "medium" with "an SVP of 2."[4] (R. at 60). In his cross-examination, Plaintiff's counsel asked if the limitations set forth precluded an ability to do detailed written and oral instructions, and

---

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and off bearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." *See* 20 C.F.R. § 404.1568.

the VE responded, "yes." (R. at 62). The VE's response does not conflict with his earlier testimony.

The ALJ aptly noted that the VE's job listings "do not require carrying out detailed instructions[,]" and that "[t]he general educational development reasoning level for each of the jobs is 2, which, among other things, is specified as 'Apply commonsense understanding to carry out detailed but uninvolved written or oral instruction.'" (R. at 26). The ALJ then noted that to the extent there was a conflict between the DOT and the VE's testimony, the VE's experience informed his testimony. (*Id.*) *See Biestek v. Berryhill*, 139 S. Ct. 1148, 11532-53 (2019)( "[w]hen offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and date otherwise developed form their own "experience in job placement or career counseling.")(citations omitted). Finally, the ALJ explained that "the general educational development levels for the occupations identified are consistent with or less than those achieved in the claimant's past work or education and not inconsistent with the limitations in the residual functional capacity finding." (*Id.*).

Plaintiff overlooks that pursuant to the DOT, unskilled work corresponds to an SVP of **1**-2. (Emphasis added); *See* 20 CFR §§ 404.1568 and 416.968; *see also Social Security Ruling, SSR 00-4p.; Titles II and XVI Use of Vocation Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions; see also* Dictionary of Occupational Titles, app. C, § III (4th ed. 1991) (defining jobs with Level 2 reasoning as requiring the employee to "carry out detailed but uninvolved written or oral instructions" and "[deal] with problems involving a few concrete variables in or from standardized situations."). Thus, there was no apparent conflict to be resolved. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Clearly, the ALJ considered Plaintiff's particular circumstances in formulating her work capacity given her restrictions. No error occurred here.

/ / /

/ / /

> c. **Whether remand is required because the ALJ failed to account for Plaintiff's conclusively moderate limitations in her ability to concentrate, persist and maintain pace**

Plaintiff asserts that the ALJ failed to include any work-related limits to account for her moderate limitation in concentrating, persisting or maintaining pace. (Doc. 18 at 15). The Defendant responds that the ALJ's RFC finding that Plaintiff can perform simple tasks adequately captures the finding of moderate limitations in concentrating, persisting or maintaining pace. (Doc. 24 at 13).

The ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04 and 12.06." (R. at 19). He further found that regarding her "concentrating, persisting, or maintaining pace, the claimant had moderate limitations." (*Id*.) In making his finding, the ALJ consulted the "paragraph B" criteria and observed that the longitudinal record did not document the reduced functioning at the severity or frequency alleged by Plaintiff. (R. at 19-22). The ALJ observed that Plaintiff had "good cooperation, logical thought process, logical thought content, good attention/concentration, good insight, intact memory, and good judgment." (R. at 22).

As Plaintiff points out "moderate" limitations indicated that a claimant's ability to function "independently, appropriately, efficiently and on a sustained basis" is *somewhat limited*" and more severe than a mild or no limitations. (Doc. 18 a 15) (emphasis added). Yet, she discounts that in the RFC determination, the ALJ found that she could not perform her past jobs and that she could only perform simple, repetitive tasks. (R. at 24) (finding Uwe Jacobs' Ph.D., opinion persuasive that Plaintiff "could sustain concentration, persistence, and pace for simple tasks and should have limited social contact."). Thus, the finding that Plaintiff could only perform simple tasks did inform the work-related restrictions the ALJ found Plaintiff to have. No error occurred here.

/ / /

/ / /

/ / /

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**. The Clerk of Court is directed to enter judgment accordingly and terminate this action.

Dated this 16th day of September, 2022.

Honorable Diane J. Humetewa
United States District Judge